IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 17-cv-02572-MEH

GEORGIANA CHAVEZ as assignee of Marlena Whicker,

    Plaintiff,

v.

ARIZONA AUTOMOBILE INSURANCE COMPANY,

    Defendant.

---

## ORDER ON MOTION TO DISMISS

---

**Michael E. Hegarty, United States Magistrate Judge**.

    In this "duty to defend and indemnify" action, Plaintiff Georgiana Chavez ("Plaintiff") sued Marlena Whicker ("Whicker"), the driver of a vehicle allegedly insured by the Defendant Arizona Automobile Insurance Company ("Defendant"), in the District Court for the County of Arapahoe, Colorado and obtained a default judgment against Whicker in the amount of $732,238.72 with accruing interest.

    Here, Plaintiff, the alleged assignee of all rights Whicker held against Defendant as an "insured" under the subject insurance policy, claims Defendant failed to defend Whicker, failed to pay insurance benefits with respect to the underlying litigation, and acted in bad faith. Defendant moves to dismiss this action asserting that Plaintiff fails to plausibly allege Whicker was an "insured" as defined by the subject policy. The Court finds Defendant improperly relies on a "duty to defend" standard in arguing Plaintiff fails to allege Whicker was an "insured" and, thus, the Court will deny the Defendant's motion.

**BACKGROUND**

I.   **Statement of Facts**

The following are factual allegations (as opposed to legal conclusions, bare assertions, or merely conclusory allegations) made by the Plaintiff in the operative First Amended Complaint, which are taken as true only for analysis under Fed. R. Civ. P. 12(b)(6) pursuant to *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

On December 4, 2015, Plaintiff was involved in an automobile collision in which she was the passenger of a vehicle rear ended by an automobile operated by Whicker. The owner of the vehicle, Javier Galindo, permitted Whicker to use it. As a result of the collision, Plaintiff sustained serious and permanent injuries.

At the time of the collision, the vehicle operated by Whicker was allegedly insured under Defendant's Policy No. 56 COAA 000029252 (the "Policy"). Pursuant to the Policy, Defendant agreed to pay $25,000 per person/$50,000 per accident to protect its insureds for legal liability to persons such as the Plaintiff. By letter dated June 26, 2015, Plaintiff requested from Defendant a tender of the $25,000 policy limits. Defendant rejected the offer and failed to tender any payment to Plaintiff.

On October 1, 2015, Plaintiff filed a lawsuit against Whicker in the District Court for Arapahoe County, Colorado, Civil Action No. 2015CV031667 ("the Underlying Case"), seeking compensatory damages from Whicker. Whicker was served and the Return of Service was provided to Defendant on October 4, 2015. Despite being provided the Return of Service, Defendant did not file a responsive pleading to the underlying complaint nor provide any defense to Whicker.

A default judgment was entered in the Underlying Case on December 2, 2015. A damages

hearing was held on March 18, 2016 before the Honorable John L. Wheeler, who entered an award of damages on March 21, 2016. Judge Wheeler subsequently entered an Order of Judgment against Whicker in the amount of $732,238.72 with accruing interest.

Whicker has assigned to Plaintiff her rights and interests to any claims against Defendant for collection of the judgment entered in the Underlying Case, including the rights to prosecute those claims in a civil action and retain the proceeds of such action.[1]

## II.     Procedural History

Based on these factual allegations, Plaintiff claims Defendant breached its insurance contract with Galindo, the owner of the vehicle, who allegedly permitted Whicker to drive the car, and engaged in bad faith by:

   a.     Its failure to timely review, investigate and settle the claims against Whicker;

   b.     Its refusal to attempt in good faith to effectuate a prompt, fair and equitable settlement of the claims against Whicker, especially in light of the evidence concerning Whicker's liability and the severity of Plaintiff's injuries.

   c.     Its failure to provide a defense to Whicker;

   d.     Its consistent actions placing its own interests above those of its insured, Whicker;

   e.     Its depriving Whicker of the benefits and protection of the contract of

---

[1] A Bashor agreement, named after the plaintiff in *Northland Ins. Co. v. Bashor*, 177 Colo. 463 (Colo. 1972), is "a settlement reached between opposing parties after a judgment has been obtained against the defendant" in which "[t]he prevailing party agrees not to execute on the judgment in exchange for the defendant's agreement not to appeal the judgment and instead to pursue claims against third parties (and share any recovery with the original plaintiff)." *Stone v. Satriana*, 41 P.3d 705, 708 n.2 (Colo. 2002).

insurance; and

f.	Other conduct to be developed during these proceedings.

Am. Compl. ¶ 27. In response, Defendant filed the present motion seeking to dismiss the action for Plaintiff's failure to allege Whicker is an "insured" entitled to benefits under the Policy, which is necessary to demonstrate any duty to defend and indemnify.

Plaintiff counters that, because an analysis of this motion requires the Court's consideration of the underlying complaint, the Policy, a police report, and the claims notes, the motion should be converted to a motion for summary judgment. Based on these documents, Plaintiff contends that Whicker lived in the same household as the insured, and Defendant identifies no information demonstrating that Whicker was not permitted to drive Galindo's vehicle; Defendant failed to appropriately investigate whether Whicker was an insured at the time of the accident report; nothing in the claims file demonstrates the denial of coverage was based on Whicker not being an "insured" but rather on Whicker's failure to cooperate as required by the policy; and the underlying complaint need not "set forth the basis of coverage in order to trigger the duty to defend."

Defendant replies that the Court need not rely on documents outside the pleadings to consider the issue raised in the motion—whether the underlying complaint contains any facts alerting Defendant to a possible duty to defend Whicker, as the "insured," in the underlying litigation. Defendant concludes that, because it could not have discerned any duty to defend Whicker in the underlying case based on the complaint and the insurance policy, as required by Colorado law, this action should be dismissed.

## LEGAL STANDARDS

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted

4

as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pled facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* *Twombly* requires a two-prong analysis. First, a court must identify "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory. *Id.* at 678–80. Second, the Court must consider the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id.* at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id.* at 680.

Plausibility refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (quoting *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008)). "The nature and specificity of the allegations required to state a plausible claim will vary based on context." *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011). Thus, while the Rule 12(b)(6) standard does not require that a plaintiff establish a prima facie case in a complaint, the elements of each alleged cause of action may help to determine whether the plaintiff has set forth a plausible claim. *Khalik*, 671 F.3d at 1191.

However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. The complaint must provide "more than labels and conclusions" or merely "a formulaic recitation of the elements of a cause of action," so that "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'"

5

*Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint has made an allegation, "but it has not shown that the pleader is entitled to relief." *Id*. (quotation marks and citation omitted).

## ANALYSIS

First, the Court will determine whether consideration of matters outside of the pleadings is necessary to resolve the issues raised in the motion to dismiss. The Court will then analyze whether Whicker was an "insured" under the Policy at the time of the automobile collision.

**I. Conversion to Fed. R. Civ. P. 56**

Pursuant to Fed. R. Civ. P. 12(d), "if, on a motion under Rule 12(b)(6) or Rule 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Plaintiff contends that the Court's consideration of documents, including those submitted by the Defendant, requires the present motion be converted to a Rule 56 motion. The Court disagrees that Defendant's documents require conversion.

Generally, when ruling on a motion brought pursuant to Fed. R. Civ. P. 12(b)(6), a court should not look beyond the contents of the complaint itself. *MacArthur v. San Juan Cty.*, 309 F.3d 1216, 1221 (10th Cir. 2002). However, this Court has "broad discretion in determining whether or not to accept materials beyond the pleadings." *Lowe v. Town of Fairland*, 143 F.3d 1378, 1381

6

(10th Cir. 1998). The mere fact that the parties provided documents to this Court does not require the Court to rely on those documents. *Lybrook v. Members of Farmington Mun. Sch. Bd. of Educ.*, 232 F. 3d 1334, 1341–42 (10th Cir. 2000). Thus, the Court "has discretion in deciding whether to convert a motion to dismiss into a motion for summary judgment by accepting or rejecting the attached documents." *JP Morgan Trust Co., Nat'l Ass'n v. Mid–America Pipeline Co.*, 413 F. Supp. 2d 1244, 1256–57 (D. Kan. 2006).

Notwithstanding these general rules, "if a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a [Rule 12(b)(6)] motion to dismiss." *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997). Additionally, "facts subject to judicial notice may be considered in a Rule 12(b)(6) motion without converting a motion to dismiss into a motion for summary judgment." *Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006). This Court may "take judicial notice of publicly-filed records in our court and certain other courts concerning matters that bear directly upon the disposition of the case at hand" without converting a motion dismiss into a motion for summary judgment. *United States v. Ahidley*, 486 F.3d 1184, 1192 n.5 (10th Cir. 2007). However, these documents "may only be considered to show their contents, not to prove the truth of matters asserted therein." *Tal*, 453 F.3d at 1264 n.24 (quoting *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002)).

Under Colorado law, courts adhere to the "four corners rule" or "complaint rule" in which they determine the duty of an insurer to defend an "insured" in an underlying lawsuit by comparing the terms of the insurance policy with the allegations made against the "insured" in the underlying

7

complaint. *DISH Network Corp. v. Arch Specialty Ins. Co.*, 659 F.3d 1010, 1015–16 (10th Cir. 2011). "In the duty to defend context, the 'complaint rule' operates to cast a broad net, such that when the underlying complaint alleges any facts or claims that might fall within the ambit of the policy, the insurer must tender a defense." *Id.* at 1015 (quoting *Cyprus Amax Minerals Co. v. Lexington Ins. Co.*, 74 P.3d 294, 301 (Colo. 2003)).

Thus, to determine whether Defendant owed its "insured" a "duty to defend," this Court must "compar[e] the terms of the insurance policy with the allegations made against the insured in the underlying complaint." Both the underlying complaint and the insurance policy in this case are "referred to in the complaint and [ ] central to the plaintiff's claim[s]." *See GFF Corp.*, 130 F.3d at 1384; *see also* Am. Compl. ¶¶ 6, 7, 8, 9, 11. In addition, the underlying complaint is a matter of public record and, thus, is subject to judicial notice and may be considered to show its contents. *Tal*, 453 F.3d at 1264 n.24.

Therefore, for purposes of determining whether a duty to defend an "insured" under the Policy arose, the Court finds that it need not convert the motion based solely on the documents submitted by Defendant. The Court will next determine whether it must consider Plaintiff's documents—police report and claims file—to resolve the motion.

## II. Does the Plaintiff Plausibly State that Whicker Was an "Insured"?

Plaintiff's claims are based on her allegations that Defendant failed to provide a defense and indemnification of its "insured," Whicker, in the underlying action. Plaintiff does not, and cannot, dispute that her claims for breach of insurance contract and bad faith breach of insurance contract require that she prove Whicker (the assignor) is an "insured" under the Policy.

It is undisputed that Whicker was not a *named* insured on the Policy. Rather, in the operative

8

Amended Complaint, Plaintiff alleges that Whicker was permitted to use the vehicle. *See* Am. Compl. ¶ 5. The Policy provides, in pertinent part:

> DEFINITIONS
>
> * * *
>
> A. Throughout this policy, **you** and **your** refer to the named insured shown in the **Declarations**, and:
>
> 1. The spouse; or
>
> 2. A party who has entered into a civil union with the named insured recognized under Colorado law;
>
> if a resident of the same household.
>
> * * *
>
> F. **Family member** means a person related to **you** by blood, marriage, civil union recognized under Colorado law or adoption who is a resident of your household. This includes a ward or foster child. Unmarried dependent children temporarily away from home will be considered residents if:
>
> 1. they are under the age of twenty-five (25) years; and
>
> 2. they do not have a permanent residence other than your residence.
>
> * * *
>
> INSURING AGREEMENT
>
> A. Subject to the Limit of Liability shown on the Declarations and if you pay a premium when due for Bodily Injury Liability coverage and Property Damage Liability coverage, we will pay compensatory damages for bodily injury or property damage for which any **insured** becomes legally responsible because of an auto accident.
>
> * * *
>
> B. **Insured** as used in this Part means:
>
> 1. **You** or any **family member** for the ownership, maintenance or use of any auto

or trailer.

2. Any person using your **covered auto** with the express or implied permission of **you**.

\* \* \*

Insurance Policy, ECF No. 30-2 at 3–4. Based on this language and the underlying complaint alleging Whicker "failed to stop and rear ended Plaintiff's vehicle" (Compl. ¶ 6, ECF No. 22-1), the Court finds Defendant is correct that the underlying complaint contains nothing on its face demonstrating that Whicker is an "insured" under the Policy. However, that does not end the matter.

The Policy specifically provides that "[*a*]*ny person* using your covered auto with the express or implied permission of you" is an "insured." ECF No. 30-2 at 4 (emphasis added). Thus, when reviewing the underlying litigation for a potential duty to defend, the Defendant here was required to determine whether Whicker was either the named insured or a person permitted to use the named insured's vehicle. Relying on her attached documents, Plaintiff argues that Defendant had sufficient information at the time the underlying litigation was filed to determine whether Whicker was an "insured" covered under the Policy. Defendant counters that the Court is not permitted to consider any documents other than the Policy and the underlying Complaint in accordance with the "duty to defend" standard. The Court finds that a determination of whether a person is an "insured" is not as restrictive as the Defendant contends.

In other words, Defendant improperly relies on the "duty to defend" standard for its proposition that Whicker was not an "insured" under the Policy. The two issues are different and, thus, differently analyzed.[2] Whether a party is an "insured" requires interpretation of the subject

---

[2] The Court notes the Defendant's statement in the present motion, "*Before* the duty to defend can arise, it must be established that the defendant named in a complaint is an 'insured'

10

policy and, if the policy's definition of "insured" is ambiguous or subject to more than one meaning, then the policy will be construed against the insurer and extraneous evidence may be necessary to resolve the issue. *See Sachs v. Am. Family Mut. Ins. Co.*, 251 P.3d 543, 546 (Colo. App. 2010)) (where a term in an insurance policy is ambiguous, meaning it is susceptible to more than one reasonable interpretation, the court will construe the term against the drafter and in favor of providing coverage to the insured); *see also Olson v. State Farm Mut. Auto. Ins. Co.*, 174 P.3d 849, 857 (Colo. App. 2007) ("Extraneous evidence is admissible to prove the intent of the parties only when the terms of the instrument are ambiguous.") (quoting *O'Reilly v. Physicians Mut. Ins. Co.*, 992 P.2d 644, 647 (Colo. App. 1999)).

Separately, the issue of whether a duty to defend arises already presumes that the "insured" issue has been resolved—i.e., that the defendant in the underlying litigation is an "insured." In a recent case cited by Defendant, the Tenth Circuit interpreted Colorado's law regarding the "duty to defend" as follows:

> Under Colorado law, an insurance carrier's duty to defend under a liability insurance policy arises whenever a complaint alleges any facts that arguably fall under the coverage of the policy. The actual liability of the **insured** to the claimant is not the criterion which places upon the insurance company the obligation to defend. Rather, the obligation to defend arises from allegations in the complaint, which if sustained, would impose a liability covered by the policy. [W]here the insurer's duty to defend is not apparent from the pleadings in the case against the **insured**, but the allegations do state a claim which is potentially or arguably within the policy coverage,... the insurer must accept the defense of the claim. This duty exists even if there is some doubt as to whether a theory of recovery within the policy coverage has been pleaded. An insurer is not excused from its duty to defend unless there is no factual or legal basis on which the insurer might eventually be held liable to indemnify the **insured**. In other words, the **insured** need only show that the underlying claim may fall within policy coverage; the insurer must prove that it cannot.

---

as defined in the applicable policy," and its cited caselaw regarding interpretation of an insurance policy. Mot. 5 (emphasis added).

11

*Ace Am. Ins. Co. v. Dish Network, LLC*, 883 F.3d 881, 887–88 (10th Cir. 2018) (citations and quotation marks omitted) (emphasis added); *see also Cotter Corp. v. Am. Empire Surplus Lines Ins. Co.*, 90 P.3d 814, 829 (Colo. 2004) (to defeat its duty to defend, "an insurer must establish 'there is no factual or legal basis on which the insurer might eventually be held liable to indemnify the **insured**.'") (emphasis added). In fact, the Colorado Supreme Court's expressed policy reason behind the limitation to consider solely the allegations in the underlying complaint in determining when a duty to defend arises reflects that a duty is not considered unless an "insured" has been already established: "Determining the duty to defend based on the allegations contained within the complaint comports with the **insured's** legitimate expectation of a defense." *Hecla Min. Co. v. New Hampshire Ins. Co.*, 811 P.2d 1083, 1090 (Colo. 1991) (emphasis added). This Court concludes Colorado law demonstrates that resolving the questions of whether a person is an "insured" and whether an insurer owes its insured a "duty to defend" requires two separate analyses.

With respect to the "insured" issue, the Tenth Circuit instructs the following regarding the interpretation of insurance policies in Colorado:

> In construing the terms of an insurance policy, Colorado law mandates that the court apply ordinary principles of contract interpretation. Policy terms are to be interpreted as understood by an ordinary person, not by one engaged in the insurance business. Further, the court should, if possible, give effect to the reasonable expectations of the insured. Any ambiguity in a policy must be construed against the insurer and in favor of coverage. Ambiguity exists where a policy term admits of more than one reasonable interpretation.

*DISH Network Corp.*, 659 F.3d at 1016 (citations and quotation marks omitted). With these principles in mind, the Court finds that the definition of an "insured" under the Policy in this case is subject to more than one interpretation; that is, whether Whicker was expressly or impliedly permitted to drive the named insured's automobile when she collided with the taxi in which Plaintiff

was a passenger (as she alleges in the Amended Complaint), or even whether she was a "family member" as a resident in the insured's household (as arguably suggested by documents submitted by the Plaintiff), are questions that require resolution based on factual evidence submitted by the parties.

Again, the Plaintiff here alleges that Galinder permitted Whicker to use the vehicle. *See* Am. Compl. ¶ 5. The Court finds this allegation sufficiently plausible to demonstrate Whicker was an "insured" under the Policy. *See Iqbal*, 556 U.S. 662, 678; *see also* Insurance Policy ¶ B.2., ECF No. 22-1 ("Insured as used in this Part means: . . . Any person using your covered auto with the express or implied permission of you."). Therefore, the Court finds it need not convert the present motion to a motion for summary judgment and will deny the Defendant's motion to dismiss based on its argument that consideration solely of the insurance policy and the underlying complaint fails to show Whicker was an "insured" under the Policy.

## **CONCLUSION**

Based on the entire record and for the reasons stated above, the Court **denies** Defendant's Motion to Dismiss Pursuant to F.R.C.P. 12(b)(6) [filed January 18, 2018; ECF No. 22].

ORDERED and DATED at Denver, Colorado, this 15th day of May, 2018.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty  
United States Magistrate Judge